In the Matter of 330 RESTAURANT CORP., Petitioner, v. STATE LIQUOR AUTHORITY, Respondent.

First Department, October 30, 1969.

*Elvin I. Unterman* of counsel (*James B. Wigdor* with him on the brief), for petitioner.

*Stanley Stein* of counsel (*Eli Ratner*, attorney), for respondent.

STEUER, J. Petitioner, the holder of a restaurant liquor license, brings this article 78 proceeding to annul the action of respondent State Liquor Authority in canceling its license. Respondent bases its action on a claimed violation of rule 36 of its rules (9 NYCRR 53.1) in that it claims that the licensed premises ceased to be operated as a bona fide premises within the contemplation of the license issued.

There is no substantial dispute as to the facts. The licensee operates a restaurant which has a seating capacity of 162 persons. It also operates a so-called club which has between 1,300 and 1,500 members. There are five classes of membership, depending mostly on age and whether the member is a resident of the city or resides at a distance. These members pay an annual fee, varying between $500 annually for a resident over 30 years of age to $100 for one who resides abroad. There are also honorary members, consisting of celebrities, who pay nothing. One gets to be a member by paying the fee and filling out a form sponsored by a member. There is no admission procedure. The restaurant opens at 7:00 P.M. Admission is limited to members unless there are vacant tables, in which case the public is admitted upon a fee of $7.50 per person. This condition prevails until 10:30 P.M., after which time there is no priority and persons are admitted on a first come first served basis. The only other distinction is that nonmembers must pay cash while members are given credit. About 80% of the income of the club goes to the licensee and the remainder is devoted to the bookkeeping and similar expenses accruing on account of the club.

The Alcoholic Beverage Control Law contains a definition of what constitutes a restaurant (§ 3, subd. 27). In effect, it defines the word as a place which is regularly and in a bona fide manner used and kept open for the serving of meals to guests for compensation and which has suitable kitchen facilities connected therewith. Guests are defined as persons who come to the restaurant for the purpose of obtaining a meal and who actually order and obtain a meal therein.

There is no statutory requirement as to how many meals are to be served daily or at what hours meals are to be available, and the respondent does not base its contentions on the hours petitioner was either open or closed. The gist of the contention supporting the action is that as a general practice persons do not

come to petitioner's premises unless they are members of the club.

We can assume for the purposes of this case that a restaurant liquor license may be denied where the general public is refused service, though this question is not free from doubt. However, there can be no doubt at all that the imposition of a cover charge or other admission fee is not a refusal of service (*Matter of Castle Hill Beach Club* v. *Arbury*, 2 N Y 2d 596). It makes no difference whether the fee is in the form of a weekly, monthly or other periodic charge (*Matter of Castle Hill Beach Club* v. *Arbury*, 2 N Y 2d, at p. 601; *Playboy Club of N. Y.* v. *Hostetter*, 40 Misc 2d 449, affd. 19 A D 2d 822, affd. 14 N Y 2d 933). Moreover, it surely cannot affect the right to a restaurant liquor license that the annual admission fee is at certain times or under certain conditions not exacted.

Respondent does not suggest, as it did in another situation, that petitioner is in fact a club and should seek a club license (*Matter of Gaslight Club* v. *State Liq. Auth.*, 18 A D 2d 413). In that instance, the operator followed the suggestion only to lose the club license when it appeared, as it does here, that the operation was for profit and did not meet the definition of a club contained in the statute (Alcoholic Beverage Control Law, § 3, subd. 9). Quite obviously the fact that petitioner claims that it is a club or has a club in connection with its operation does not make it a club. What petitioner is and does is to operate a restaurant and virtually restrict its guests to those who are willing to pay a substantial sum for the privilege of being accommodated.

Respondent calls attention to a caveat contained in the affirming memorandum of this court in *Playboy Club of N. Y.* v. *Hostetter* (19 A D 2d, at p. 823): "Of course, the declaration does not mean that in any case any one-time charge, under any circumstances, or at any place, would not be a ground for revocation, suspension or denial of a license." Respondent takes the position that these words constitute a grant to revoke, suspend or deny a license in any instance of a one-time charge where it deems such action desirable. What was clearly intended was that respondent may take such action when it appears that the one-time charge and the resulting limitation of access either violates some temperance purpose or interferes with the public convenience. Clearly, the fact of the imposition of a one-time charge is not in and of itself an interference with the public convenience. Nothing more was shown or attempted to be shown.

The determination of the State Liquor Authority canceling respondent's restaurant liquor license should be annulled, on the law, without costs and disbursements to petitioner.

MARKEWICH, J. (concurring). I concur for annulment in the reasoning of the majority opinion but I am not entirely persuaded that the definition of a restaurant is quite as clear as that opinion takes for granted (see Alcoholic Beverage Control Law, § 3, subd. 27). However, petitioner never claimed that a restaurant was not operated as adjunctive to a private club, and the point was never raised, argued, or briefed here. Therefore, I believe that there is no basis for the position taken by the minority.

CAPOZZOLI, J. (dissenting). Petitioner applied to the State Liquor Authority " for a restaurant liquor license to sell liquor, wine, cider and beer at retail to be consumed on the premises ". Nothing in its application makes any reference to the operation of a club, as distinguished from a restaurant. Accordingly, the respondent did issue a restaurant license to the petitioner under which it operated. Therefore, it is clear that, in order for the petitioner to justify retention of its license, it must operate solely as a restaurant.

After an investigation by the respondent, a proceeding to revoke the petitioner's license was instituted, based on the following charge: " That the licensed premises have ceased to be operated as a bona fide premises within the contemplation of the license issued, all cause for revocation, cancellation or suspension of its license pursuant to Rule 36, subd. 4 of the Rules of the State Liquor Authority. (9 NYCRR 53.1 d)."

A hearing was held before a Deputy Commissioner of the State Liquor Authority, at which evidence was presented by both sides and it resulted in a finding that the petitioner was not operating " a bona fide premises within the contemplation of the license issued " and same was canceled. Amongst other things the hearing officer found: " I find that the licensee herein discourages the general public from attempting to use the licensee's facilities. Its rules and regulations are so promulgated as to create the impression that the Numero Uno Club is not open to the public. * * * This obviously results in the exclusion of the general public and creates an atmosphere of a private membership club without the necessity of conforming to the rules and regulations of the State Liquor Authority governing a club liquor license."

The basic question presented in this appeal is whether the licensed premises are operated as a restaurant or a club. Sub-

division 27 of section 3 of the Alcoholic Beverage Control Law defines a restaurant as follows: "'Restaurant' shall mean a place which is regularly and in a bona fide manner used and kept open for the serving of meals to guests for compensation * * *. 'Meals' shall mean the usual assortment of foods commonly ordered at various hours of the day * * *. 'Guests' shall mean persons who during the hours when meals are regularly served therein, come to a restaurant for the purpose of obtaining, and actually order and obtain at such time, in good faith, a meal therein."

Subdivision 9 of section 3 of the same law defines a club as follows: "'Club' shall mean an organization of persons incorporated pursuant to the provisions of the membership corporations law or the benevolent orders law, which is the owner, lessee or occupant of a building used exclusively for club purposes, and which does not traffic in alcoholic beverages for profit and is operated solely for a recreational, social, patriotic, political, benevolent or athletic purpose but not for pecuniary gain".

A review of the record has convinced me that there is substantial evidence that petitioner violated the Alcoholic Beverage Control Law and the Rules of the State Liquor Authority. Respondent was justified in finding that the actions of the petitioner, in effect, excluded members of the public from obtaining service in the restaurant because they were not members of the club.

A determination of an administrative body is to be accepted by the courts "if it has 'warrant in the record' and a reasonable basis in law". (*Matter of Mounting & Finishing Co.* v. *McGoldrick*, 294 N. Y. 104, 108.) The refusal of the petitioner to accept the reservation requested by Investigator Paul W. Hammer over the telephone and, later in the day, its refusal to serve this same investigator when he personally entered the premises of petitioner, in the company of another person, because they were not members of the club or guests of a member, clearly violate the law.

Not only does the record contain the testimony of the investigator, to which reference has already been made, but it discloses that the petitioner called as its witness the manager of its restaurant.

A review of the testimony of this witness clearly demonstrates that, instead of favoring the petitioner in its position, it does just the opposite and shows that a member of the public, who was not a member of the club, was not welcome to enjoy the facilities of the restaurant. In this connection attention is directed to the

following testimony adduced from this witness. At page 57 of the record we find.

"Q. You would honor the reservation of anyone that called? A. Well, reservations are handled this way. A club member has the preference of reservation. If we have any free space available, if we do get a call from a non-member he's admitted if we have room.

"Q. Do you ever have room? A. Yes, sir.

"Q. When? A. A few nights a week.

"Q. Which nights are they? A. Sunday night we have a little room. We're not so busy on Sundays."

Again, at pages 58, 59 we find:

"The Witness: That's right. The member has a preference over a non-member for getting a table.

"Commissioner Myers: I'm not trying to be vague here, but I don't understand it myself. If I were to call you up at 5 o'clock in the evening as a non-member, and you had a table, I would get the table; isn't that what you said?

"The Witness: No. At 7 o'clock, when we open our doors, if we have any tables left. In other words, if we take one-hundred reservations, we have forty or fifty seats left, if a non-member calls and wants to make a reservation, and comes down, he gets in. * * *

"Commissioner Myers: In other words, a non-member can only make a reservation after 7 P.M.?

"The Witness: Right. * * *

"Commissioner Myers: But a non-member cannot make a reservation before 7 p. m. per se?

"The Witness: Well, the way we operate it, if we have any room left after the members make reservations—".

It is obvious that a simple issue of fact was presented to the hearing officer and his determination of that issue against the petitioner, as adopted by the respondent Authority, is amply supported by substantial evidence and there is no justification for this court to substitute its judgment for that of the administrative tribunal.

The reliance of the majority and the petitioner on the case of *Playboy Club of N. Y.* v. *Hostetter* (40 Misc 2d 449, affd. 19 A D 2d 822, affd. 14 N Y 2d 933) is misplaced. An examination of the opinion by Mr. Justice GELLINOFF, in that case, clearly discloses that there is not the slightest intimation that the Playboy Club excluded any member of the public from using its restaurant facilities because he was not a member of the club. On the contrary, the opinion is replete with references to the fact that the

Playboy Club did admit any member of the public willing to pay the fee charged. At pages 451 to 452 of the opinion we find:

"Plaintiff admits any member of the public who is of lawful age. It desires to charge an admission fee of $25, which may be increased in the future, entitling the payor to a paper key and receipt. The receipt is nontransferable and good for 30 days, during which the payor is permitted to enjoy the facilities of the restaurant and of the others in the Playboy group. He must, however, pay cash for any meals or drinks served to him during the 30 days. Playboy Clubs International, Inc., checks the payor's credit and, if it is found satisfactory, a permanent metal key is issued to him. This metal key permits the possessor to enjoy the facilities of the restaurant and of others in the Playboy group, and also entitles him to credit for food and drink, subject to local laws as to extension of credit.

"If the payor's credit is found unsatisfactory, he is notified to that effect and informed that he may have his fee refunded or obtain a paper key, which permits him to enjoy the facilities of Playboy Restaurants on a cash basis. * * *

"Any member of the public, of lawful age, may, by payment of the admission fee, obtain a paper key * * * Its complaint seeks only an adjudication that it may validly require an admission fee — not that it is entitled to exclude any member of the public who is willing to pay the fee."

The question is not whether the petitioner in the case at bar has the right to charge a fee for admission to its restaurant. I agree that it does have that right. The real problem is presented by the action of the petitioner in discouraging and excluding members of the public from obtaining service in the restaurant because they were not members of the club. Unlike the *Playboy* case, one could not walk into petitioner's restaurant, pay the required fee right then and there and be served. He would first have to join the club. The evidence is overwhelming that petitioner is operating a club and the public is not welcome.

For the reasons above stated I dissent and vote to confirm the determination of the respondent.

McGivern and Macken, JJ., concur with Steuer, J.; Markewich, J., concurs in an opinion; Capozzoli, J. P., dissents in opinion.

Determination annulled, on the law, without costs and disbursements.